997 So.2d 1234 (2008)
Stewart ZUPNIK and Dade Paper & Bag Co., Inc., Appellants,
v.
ALL FLORIDA PAPER, INC., Appellee.
No. 3D08-1371.
District Court of Appeal of Florida, Third District.
December 31, 2008.
Rehearing Denied January 16, 2009.
*1235 Berger Singerman and Leonard K. Samuels, Fort Lauderdale and Samuel C. Cozzo, Miami; Littler Mendelson and Courtney B. Wilson, Miami, for appellants.
Boies, Schiller & Flexner and Carlos Sires, Fort Lauderdale; Jennifer G. Altman, Miami, for appellee.
Before COPE and RAMIREZ, JJ., and SCHWARTZ, Senior Judge.
RAMIREZ, J.
Stewart Zupnik and Dade Paper & Bag Co., Inc., appeal a temporary injunction order enjoining Zupnik from competing against his former employer, All Florida Paper, Inc. We reverse because the restrictive covenants set forth in the employment agreement expired at the end of the two-year term, and All Florida failed to establish that Dade Paper misappropriated any alleged trade secrets.
Stewart Zupnik is a sales representative with approximately twenty years experience selling paper and janitorial products to customers in the food industry. Prior to being employed by All Florida, Zupnik worked for Dade Paper, All Florida's largest *1236 competitor, and its precursor, Continental Paper Products, Inc., for several years. Dade Paper is Zupnik's codefendant in the present case.
On March 14, 2004, Zupnik contracted to work in the same capacity with All Florida, signing an Employment, Confidentiality and Non-Competition Agreement. The term of employment was to last two years. Section 2 of the Agreement is entitled "TERM OF EMPLOYMENT" and provides:
The employment shall be for a term of two years
Section 8 of the Agreement, entitled "CONFIDENTIALITY" provides, in pertinent part:
A. Confidential Information ... Employees shall not during the Term, or within a period of five (5) years after termination of the Term, use... or otherwise disclose ... any trade secret or other confidential information of All Florida ...
Section 9, entitled "NON-COMPETITION" provides, in part:
He or she agrees that during the Employment Term and within twelve (12) months from the termination of said term, he or she will not directly or indirectly... compete against ALL FLORIDA, within a fifty (50) mile radius of where ALL FLORDIA then engages in business:
Section 10, entitled "OPTION" provides, in part:
A. Exercise of the Option: At the expiration of this two (2) year contract, the employee can exercise an option to remain in ALL FLORIDA'S employ as an at-will employee. The Employee will have seventy two (72) hours from the end of this contract employment in which to exercise the option.
Schedule 1 of the Agreement governed Zupnik's compensation during the two-year term and "After the expiration of this contract, if Employee exercises his option to remain in ALL FLORIDA'S employ..." The Agreement does not contain language specifying that the restrictive covenants would continue beyond the two-year term if Zupnik remained an at-will employee after the two-year term expired.
The agreement included a twelve-month restriction on Zupnik's ability to compete against All Florida after the termination of the agreement term, as well as a five-year restriction regarding confidential trade secrets. In consideration, the agreement provided Zupnik with both a guaranteed salary and commission plan for a two-year period. After the initial two year guarantee, the salary and commission plan were no longer guaranteed but Zupnik could exercise an option, within seventy-two hours of the expiration of the contract, to remain an All Florida sales representative, as an at-will employee.
After the expiration of the initial two-year contract term, Zupnik remained an All Florida employee for an additional two years, but the relationship was not formalized in a written document. The parties dispute the significance of this, with All Florida arguing that as a matter of law, the twelve-month noncompetition period did not start until Zupnik left his employment at All Florida. Zupnik argues that the noncompetition restriction term ended with the conclusion of the initial two-year agreement term.
During the last two years of Zupnik's employment at All Florida, several adverse adjustments were made to Zupnik's compensation plan. Zupnik consequently formed his own company, South Florida Paper Products LLC, intending to service his long-standing customers, as his non-compete restriction with All Florida had *1237 expired. Zupnik contacted Dade Paper to see if Dade Paper would sell paper products to South Florida Paper in order for South Florida Paper to become a redistributor of paper products. All Florida hired a private detective, who monitored these allegedly "clandestine" meetings at area restaurants and reported to the trial court that Zupnik provided Dade Paper with proprietary information, including client names, pricing, and profit margins.
All Florida asserted claims against Dade Paper for theft of trade secrets, conspiracy to steal trade secrets, tortious interference based on Zupnik's disclosure of trade secrets to Dade Paper, and tortious interference based on Dade Paper's alleged solicitation of All Florida's customers using All Florida's trade secrets. Each of these causes of action was premised on Zupnik's alleged disclosure of trade secrets and/or confidential information to Dade Paper, and/or Dade Paper's alleged use of such trade secrets/confidential information to compete with All Florida. All Florida's claims against Dade Paper are based on the following facts alleged in paragraph 24 in its Verified Complaint:
In late April 2008, Zupnik met with William Baltzell, who is the operations manager of Dade Paper. Zupnik provided or disclosed to Baltzell of Dade Paper documents belonging to All Florida that contain Confidential Information, including customer identities, terms, and prices, in violation of his Confidentiality and Non-compete agreement and common law duties.
In a subsequent evidentiary hearing on All Florida's emergency motion for temporary injunction, All Florida's counsel told the trial judge that Zupnik met at a Denny's restaurant in West Dade while he was employed with All Florida and shared with the operation manager of Dade Paper confidential information belonging to All Florida, including customer names, prices and terms of sale. Also at that hearing, All Florida's president admitted that he had no personal knowledge of any disclosure of trade secrets or confidential information. In fact, the only proof at the evidentiary hearing was the testimony of All Florida's private investigator, who testified that he observed Zupnik give Baltzell a folder at the Denny's restaurant. The private investigator stated he did not have any knowledge as to what information was in the alleged folder. He further testified that he walked past the table where Zupnik and Baltzell were sitting and saw "what appeared to be invoices" of All Florida, however, he did not observe any exchange or disclosure of information concerning any specific All Florida customer or pricing information. Zupnik testified that he did not disclose or provide any All Florida invoices or any other information concerning All Florida to Dade Paper.
The trial court subsequently enforced the non-compete provision in its entirety, precluding Zupnik from competing against All Florida. In paragraph 9 of the temporary injunction, the trial court correctly ruled that the contract was clear and unambiguous. The trial court found that the restrictive covenants extended to the at-will employment period beyond the two-year term of the agreement. The court further concluded that the evidence introduced made it clear that Zupnik, "possessed trade secrets and other confidential information belonging to All Florida, including customer lists, customer prices, supplier lists, supplier prices, and sales and profit margins, and improperly disclosed that information, including to Defendant Dade Paper." The trial court found that "Dade Paper and Zupnik conducted covert meetings, while Zupnik was still employed by All Florida, exchanged confidential and trade secret information, *1238 and otherwise devised a scheme by which Zupnik and Dade Paper would unfairly compete with All Florida using it's confidential and trade secret information."
Zupnik contends on appeal that the trial court erred in finding that the restrictive covenants set forth within the agreement did not expire at the end of the two-year term. We agree with the trial court's ruling that the contract is clear and unambiguous, but disagree with the court's finding that the restrictive covenants extended to the at-will employment period beyond the two-year term of the agreement.
The parties agree that the contract is clear and unambiguous and should be reviewed de novo by this Court. Kaplan v. Bayer, 782 So.2d 417 (Fla. 2d DCA 2001). This Court has held that post-termination restrictions expire upon the termination of an agreement for a specific term, even if an employee remains an at-will employee after the term of the written agreement expires. Sanz v. R.T. Aerospace Corp., 650 So.2d 1057 (Fla. 3d DCA 1995).
In Sanz, an employee's contract contained a non-compete provision that was to remain in effect "for a period of twenty-four (24) months immediately following the termination of his employment." Id. at 1058-9. After the three-year term originally agreed to in the contract expired, the employee continued to work for his employer as an at-will employee. Id. This Court held that a preliminary injunction pursuant to the non-compete clause was improper because the written employment agreement had expired "by its very terms." Id. See also Silverman Wender Koonin Epstein Garcia & Rosencwaig, P.A. v. Dennis, 937 So.2d 1221, 1222 (Fla. 3d DCA 2006); Gray v. Prime Mgmt. Group, Inc., 912 So.2d 711 (Fla. 4th DCA 2005); and Storz Broadcasting Co. v. Courtney, 178 So.2d 40 (Fla. 3d DCA 1965).
In the case before us, the restrictive covenants against competition, solicitation and disclosure of confidential information expired at the end of the two-year term. Zupnik remained employed by All Florida as an at-will employee for nearly two years, following the expiration of the employment term. This did not create a new employment agreement for a specified term.
We also agree with Dade Paper's contention that All Florida adduced no evidence that Dade Paper misappropriated any trade secrets and that the trial court ignored uncontradicted evidence that no such misappropriation occurred. All Florida's burden in seeking an emergency temporary injunction was to establish (1) a likelihood of irreparable harm; (2) unavailability of an adequate legal remedy; (3) a substantial likelihood of succeeding on the merits; and (4) considerations of the public interest support the entry of the injunction. Masters Freight, Inc. v. Servco, Inc., 915 So.2d 666, 666-67 (Fla. 2d DCA 2005). As the party moving for a temporary injunction, All Florida had the burden of adducing substantial competent evidence satisfying each of the conditions necessary to obtain a temporary injunction. Glenn v. 1050 Corp., 445 So.2d 625, 626 (Fla. 3d DCA 1984).
Here, All Florida failed to establish the third prong, a likelihood of success on the merits, because it adduced no evidence that Dade Paper misappropriated any specific trade secret information related to any All Florida customer. Colucci v. Kar Kare Auto. Group, Inc., 918 So.2d 431, 441 (Fla. 4th DCA 2006). All Florida failed to offer substantial competent evidence that the customer invoices or other pricing information allegedly taken were kept confidential. It also failed to establish any *1239 evidence that such information or documents related to All Florida's pricing costs were even disclosed to Dade Paper or misappropriated by Dade Paper.
In sum, the trial court erroneously failed to conclude that the restrictive covenants set forth in the employment agreement expired at the end of the two-year term. In addition, All Florida failed to establish that Dade Paper misappropriated any of All Florida's alleged trade secretes. Accordingly, we reverse the temporary injunction as to Zupnik and as to Dade Paper.
Reversed and remanded with instructions to vacate the temporary injunction as to both Zupnik and Dade Paper.